**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity,<br><br>Plaintiff,<br><br>v.<br><br>United States Forest Service, et al.,<br><br>Defendants. | No. CV-20-00020-TUC-DCB<br><br>**ORDER** |

Plaintiff, Center for Biological Diversity, sues the Defendants, the U.S. Forest Service ("USFS") and U.S. Fish and Wildlife Service ("FWS"), for allegedly violating the Endangered Species Act ("ESA"), Section 7, provisions which according to the Plaintiffs require consultation on more than 30 grazing allotments on the Apache-Sitgreaves and Gila National Forests within the upper Gila River watershed. The Plaintiffs allege that there has been widespread unauthorized cattle grazing within streamside and riparian areas that provide essential habitat for several threatened and endangered species.

On March 12, 2020, the Court granted an unopposed motion to extend the deadline for the Defendants' answer or responsive pleading to April 16, 2020. (Order (Doc. 14)). Also unopposed, a Motion to Intervene is pending by Spur Ranch Cattle Company, Arizona Cattle Growers Association, Grant County Cattle Growers, and Arizona/New Mexico Counties for Stable Economic Growth. For all the reasons stated in the Intervenor's motion, the Court grants intervention as a right, pursuant to Rule 24(a)(2).

On April 16, the Defendants filed a Motion to Dismiss Defendant FWS from Count I. (Doc. 18)). The Defendants also seek confirmation that allegations in Count II are brought only against USFS. The Plaintiff confirms the latter but objects to the former. For clarity, the Court notes the Plaintiff's confirmation that Count II claims are not made against FWS. It denies the Motion to Dismiss Count I against FWS for the reasons that follow.

## Motion to Dismiss

Defendants challenge this Court's jurisdiction to order the FWS to initiate Section 7 consultation because the ESA places this duty only on the USFS, not on FWS.

ESA provides "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and brought "to the point at which the measures provided pursuant to [the ESA] are no longer necessary." 16 U.S.C. §§ 1531(b), 1532(3). Under ESA Section 4, species are "listed" as "endangered," if "in danger of extinction throughout all or a significant portion of its range," *id.* § 1532(6), or "threatened," if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range," *id.* § 1532(20). "Any habitat of such species which is then considered to be critical habitat" is designated. *Id.* § 1533(a). "Critical habitat" includes occupied areas that contain the "physical or biological features essential to the conservation of the species and that may require special management considerations or protection," as well as unoccupied areas that themselves are essential to the species' conservation. *Id.* § 1532(5)(A)(i)-(ii).

FWS is responsible for administering ESA for terrestrial and freshwater species. 50 C.F.R. § 222.23(a).[1] Section 7(a)(2) of ESA directs each federal agency, in consultation with FWS, to "insure" that agency actions are not likely to jeopardize the continued existence of any listed species or destroy or adversely modify designated critical habitat.

---

[1] The National Marine Fisheries Service ("NMFS") administers ESA for marine species.

16 U.S.C. § 1536(a)(2). "Jeopardize" means an action that "reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. "Destruction or adverse modification" means "a direct or indirect alteration that appreciably diminishes the value of critical habitat as a whole for the conservation of a listed species." *Id.*

Consultation is required if an action agency, like USFS, determines that its proposed action "may affect" listed species or critical habitat. 50 C.F.R. § 402.14(a). If the action agency determines, with FWS's written concurrence, that the action "is not likely to adversely affect" listed species or critical habitat, the consultation is terminated. *Id.* §§ 402.13(c), 402.14(b)(1). If the action agency or FWS determines that the proposed action is "likely to adversely affect" listed species or designated critical habitat, the agencies must engage in formal consultation. *Id.* §§ 402.13(a), 402.14(a)-(b). During formal consultation, FWS analyzes the agency's proposed action to identify, among other things, the current status of the species or critical habitat, the environmental baseline, and the direct and indirect effects of the action. *Id.* §§ 402.14(g), 402.02. At the conclusion of formal consultation, FWS issues a Biological Opinion ("BiOp") determining whether the proposed action is likely to jeopardize the continued existence of any listed species or destroy or adversely modify critical habitat. *Id*. § 402.14(g)(4); 16 U.S.C. § 1536(b)(3)(A).

"Reinitiation of consultation is required and shall be requested by the Federal agency [USFS] or by the Service [FWS], where discretionary Federal involvement or control over the action has been retained or is authorized by law" if enumerated triggers occur as follows: (1) the amount or extent of taking specified in the incidental take statement is exceeded; (2) new information reveals effects of the action to an extent not previously considered; (3) the identified action is subsequently modified or (4) a new species is listed or critical habitat designated. 50 C.F.R. § 402.16(a).

The Defendants' Motion to Dismiss argues that the express provisions of this regulation require only the USFS to initiate consultation because "[t]he ESA places the

authority and, hence, any duty to reinitiate consultation solely on the action agency." (Motion (Doc. 18) at 9.) By motion, the Defendants argue that because there is no duty on FWS under ESA to initiate consultation, the Plaintiff's allegations cannot support a claim that FWS has violated a duty under ESA therefor, the Complaint fails to invoke a waiver of sovereign immunity, and the Plaintiff cannot state a claim against FWS.

Background

"Livestock grazing is a leading contributor to riparian habitat loss and degradation within the western United States, causing widespread and significant adverse impacts to watershed hydrology, stream channel morphology, soils, vegetation, water quality, and fish and wildlife habitat." (Ps' Response (Doc. 19) (citing Complaint (Doc. 1) ¶¶ 41-45.) These riparian ecosystems comprise less than 1% of the surface area within the eleven western states but are highly desirable to both imperiled native species and domestic livestock. These riparian areas support native fish, a higher diversity of breeding songbirds than any other habitat, and many species of small mammals, amphibians, and reptiles. They have also been prime areas for providing food and water for domestic livestock. This land-use dichotomy is not new.

In the late 1990s, through litigation USFS and FWS were compelled to conduct ESA Section 7 consultation with respect to USFS's authorization of grazing on 158 grazing allotments providing habitat for listed species including Southwestern willow flycatcher, spikedace, and loach minnow. (Response (Doc. 19) (citing *Sw. Ctr. For Biological Diversity v. United States Forest Serv.*, CV-97-666-TUC-JMR, consolidated with CV-97-2562-PHX-SMM; 2001 U.S. Dist. LEXIS 25027, at *4-6 (D. Ariz. Mar. 30, 2001)). Subsequently, USFS and FWS, pursuant to ESA Section 7, acted with respect to all 962 grazing allotments within the USFS Southwestern Region. *Id.* (citations omitted).

"Of the 962 grazing allotments in the southwestern region, USFS concluded that there would be no effect to listed species or their critical habitat on nearly two-thirds, or 619 allotments. *Sw. Ctr. for Biological Diversity*, 2001 U.S. Dist. LEXIS 25027, at *9-11)). An additional 321 allotments concluded with 'may affect, not likely to adversely

affect' determinations." (Response (Doc. 19) at 4.) "USFS made 'likely to adversely affect' findings for only 22 allotments (comprising just over *2 percent of all allotments in USFS R3*)." *Id.* (citing *Sw. Ctr. for Biological Diversity*, 2001 U.S. Dist. LEXIS 25027, at *10)). "FWS prepared a final Biological Opinion for these 22 allotments in February 1999," with "only one of the Region's 962 individual grazing allotments violat[ing] Section 7's substantive jeopardy and critical habitat requirements. *Id.* at *11. "Importantly, these no jeopardy and not likely to adversely affect determinations depended heavily on USFS commitments to exclude cattle from hundreds of miles of riparian areas. *Id.* at *12 (finding USFS undertaking numerous mitigation measures "to ensure that cattle grazing will have little, if any, impact on the loach minnow and spikedace while formal consultation is taking place," including "exclusion of livestock from watersheds and frequent monitoring and enforcement of these livestock exclusions. Exclusion of livestock from [streams] in the national forests has eliminated any direct adverse effects to the loach minnow and/or spikedace and minimized any indirect adverse impacts to these species.")

"For more than two decades since that initial consultation, grazing riparian exclusions, as well as regular monitoring to ensure the effectiveness of those exclusions, have continued to serve as a cornerstone for ESA compliance in relation to the USFS grazing program and site-specific decisions authorizing grazing on individual grazing allotments." (Response (Doc. 19) at 5) (citing *see Forest Guardians v. Veneman*, 392 F. Supp. 2d 1082, 1090, 1092 (D. Ariz. 2005) (in reaching no jeopardy decision, FWS relied on implementation of mitigation measures to exclude livestock from areas of critical habitat, loach minnow habitat, and riparian areas of tributaries" because "FWS recognized that one of the most effective methods for eliminating the effects of grazing on aquatic habitat is to keep livestock out of riparian areas, which the Forest Service has done on the critical habitat along the Blue and San Francisco Rivers.") *See also* Final Rule "Uplisting" Spikedace and Loach Minnow from Threatened to Endangered and Designating Critical Habitat, 77 Fed. Reg. 10,810 (Feb. 13, 2012) (noting that livestock grazing "is one of the few threats where adverse effects to species such as spikedace and loach minnow are

decreasing, due to improved management on Federal lands. This improvement occurred primarily by discontinuing grazing in the riparian and stream corridors.")

"Concerned that USFS was failing to monitor and maintain riparian grazing exclusions, in 2017 Plaintiff Center for Biological Diversity conducted on-the-ground assessments in order to verify whether cattle continue to be excluded on allotments within Apache-Sitgreaves and Gila National Forest lands within the upper Gila River watershed." (Response (Doc. 19) at 5-6 (citing Complaint (Doc. 1) ¶¶ 51-53.) These surveys allegedly documented the allegations in the Complaint of extensive, widespread, and egregious streamside and riparian degradation in the Blue River, San Francisco River, Tularosa River, Gila River, Eagle Creek, and numerous tributary streams. "Plaintiff compiled these survey results into detailed reports and provided the reports to USFS, but USFS did not take responsive action." *Id.* at 6. Plaintiff gave notice to both agencies that it intended to sue under the citizen suit provisions of ESA unless they met their legal duties to reinitiate consultation on approximately 30 allotments; Plaintiff asked USFS to take immediate action to remove cattle from riparian areas, to remediate damage caused by the unauthorized grazing, and to conduct more frequent monitoring of riparian and streamside areas.

The Plaintiff sued the agencies for failing to act. USFS generally denies Plaintiff's allegations about the extent and nature of unauthorized livestock intrusion into these riparian areas. (Motion (Doc. 18) at 7 n.4.) "FWS provided no response at all." *Id.* (Response (Doc. 19) at 6.)

Conclusion

After reading all the briefs, especially the Defendants' Reply, it is clear they are swimming upstream with their argument that a consulting agency, here FWS, "'lacks the authority to require the initiation of consultation under the ESA," (Motion (Doc. 18) at 10 (quoting *Defenders of Wildlife v. Flowers,* 414 F.3d 1066, 1070 (9th Cir. 2005)), and "[t]his is true with regard to initiating consultation in the first instance as well as reinitiating a prior consultation." (Motion (Doc. 18) at 10.) Equally, challenging is the argument that

"the plain language of the reinitiation regulations 'require *an action agency* to reinitiate formal consultation with the consulting agency' when the enumerated triggers are met.'" *Id.* at 11 (quoting *Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1264 (9th Cir. 2017) (so construing 50 C.F.R. § 402.16(b) (renumbered § 402.16(a)(2)) (emphasis added)); *see also: Or. Nat. Res. Council v. Allen*, 476 F.3d 1031, 1040 (9th Cir. 2007) (noting that "the *action agency* must reinitiate consultation with the FWS") (emphasis added); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1108 (9th Cir. 2012) (observing that, pursuant to 50 C.F.R. § 402.16(a) and (c) (renumbered § 402.16(a)(1) and (3)), "the *action agency* must . . . reinitiate consultation") (emphasis added); *accord Native Fish Soc'y v. NMFS*, 992 F. Supp. 2d 1095, 1103 (Or. 2014) (same); *Greenpeace Found. v. Mineta*, 122 F. Supp. 2d 1123, 1130 (Hawaii 2000) (same); 50 C.F.R. § 402.14(i)(v)(4) (ESA consultation regulation stating that, "[i]f during the course of the action the amount or extent of incidental taking . . . is exceeded, the Federal [action] agency must reinitiate consultation immediately"); 51 Fed. Reg. at 19,954 (explaining that "Paragraph (i)(4) requires the Federal [action] agency or the applicant to immediately request reinitiation of formal consultation if the specified amount or extent of incidental take is exceeded").

The cases relied on by the Defendants say what Defendants say they say, but the law in the Ninth Circuit also makes it clear that ESA establishes a coterminous authority for both the action agency (USFS) and the consulting agency (FWS) to reinitiate consultation when one of the triggering events occur under 50 C.F.R. § 402.16(a). Then, "[r]einitiation of consultation is required and shall be requested by the Federal agency [USFS] or by the Service [FWS]." 50 C.F.R. § 402.16(a).

The Plaintiff criticizes the Defendant's reliance on *Flowers* because it addresses the duty to consult in the first instance, which is governed by a different regulation, which focuses on the duties of the action agency, 50 C.F.R. 402.14: "Each Federal agency shall review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat." *Wildearth Guardians v. United States,* 2020 WL 2239975 *5 (May 7, 2020 (citing *Alliance for Wild Rockies v. Probert*, 412 F.Supp.3d 1188, 1201

(Mont. 2019) (expressly rejecting reliance on *Flowers* (citing *Pacificans for a Scenic Coast v. California DOT*, 204 F. Supp.3d 1075, 1093 (Calif. 2016)). "In contrast, the plain language of 402.16, the reinitiation regulation . . ., 'describes the Fish and Wildlife Services' obligation in the same terms as the action agency's obligation'" (Response (Doc. 19) at 8 (quoting *Pacificans for a Scenic Coast*, 204 F. Supp.3d at 1094).

The Court agrees with the Plaintiff that the Defendants are splitting hairs that do not exist under the ESA regulation. "Consistent with the plain text of the regulation, the Ninth Circuit has stated that '[t]he duty to reinitiate consultation lies with both the action agency and the consulting agency.'" *Pacificans for a Scenic Coast,* 204 F. Supp.3d at 1093 (quoting *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008)); *see also Wild Fish Conservancy v. United States EPA*, 331 F. Supp. 3d 1210, 1226 (Wash. 2018) (denying motion to dismiss, finding question amply settled in Ninth Circuit that plain language of ESA obligation to reinitiate consultation applies equally to NMFS and EPA); *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F. Supp. 3d 1106, 1117 (N.D. Cal. 2017) (finding "the Ninth Circuit has already addressed this precise issue multiple times and confirmed that both the action agency and the consulting agency have a duty to reinitiate consultation"); *Wild Fish Conservancy*, 331 F. Supp. 3d at 1226 (citing overwhelming weight of authority finding the consulting agency's duty to reinitiate consultation is coterminous with that of the action agency); *Alliance for the Wild Rockies*¸ 412 F. Supp. 3d. at 1201 (rejecting argument that reinitiation claim cannot be made against the FWS because it lacks the authority to require an action agency to reinitiate consultation as inconsistent with the Ninth Circuit's view).

Put another way, when one of the triggering events occur under 50 C.F.R. § 402.16(a), either agency shall request reinitiation of consultation which is required. Like these other district courts, this Court rejects the notion that FWS must sit by when a triggering event occurs, unless or until the action agency chooses to reinitiate consultation. Under such circumstances, FWS has the dual responsibility to reintitate consultation by requesting it.

The difficulty with the Defendants' argument becomes clear in the Reply where Defendants urge "[t]his Court must not make the same error as Plaintiff and other courts in asserting that the "plain language' of '*[r]einitiation of consultation is required*' imposes a duty on FWS, when that provision does not expressly impose the requirement for reinitiation of consultation on FWS, and when FWS's decades-long interpretation of that clause and the operation of the ESA both indicate that any duty to reinitiate consultation rests with the action agency, not FWS." (Reply (Doc. 21) at 3) (emphasis added). This Court is, however, bound, just like the "other courts" to which Defendants refer, to follow clearly established Ninth Circuit law, *Salmon Spawning & Recovery Alliance*, 545 F.3d at 1229. *Wild Fish Conservancy*, 331 F. Supp. 3d at 1226–27 (following also: *Gifford Pinchot Task Force v. USFWS*, 378 F.3d 1059, 1076–77 (9th Cir. 2004) (holding that discovery of new facts "mandates reinitiating formal consultations" and that "[the consulting agency] was obligated to reinitiate consultation"), *amended for another reason*; *EPIC v. Simpson Timber Co.*, 255 F.3d 1073, 1076 (9th Cir. 2001) ("The duty to reinitiate consultation lies with both the action agency and the consultation agency.")

The Defendants' reliance on *Flowers* is distinguishable because it involved a different regulation, which as noted above, focuses on the action agency and is distinguishable from 50 CFR 402.16(a) which treats action agencies and consulting agencies the same. The Defendants also rely on *Sierra Club v. March,* 816 F.2d 1376, 1386 (9th Cir. 1987), which according to the Defendants recognized that the action agency had "declined the FWS's request to reinitiate the consultation process" and "held, however, that "'[t]he ESA does not give the FWS the power to order other agencies to comply with its requests or to veto their decision.'" (Reply (Doc. 21) at 6.) The Defendants argue that the *Marsh* court "reviewed whether *the Corps* [the action agency] violated the ESA "by refusing to reinitiate consultation" under the regulation, not FWS's request." *Id.* (quoting *Marsh*, 816 F.2d at 1386-87). This is true, but it also held that the Section 7 duty to consult required the court to determine whether the Corps abused its discretion or acted arbitrarily, capriciously, or otherwise not in accordance with law by refusing to reinitiate consultation.

*Marsh,* 816 F.2d at 1386-87. In other words, the court in *Marsh* deferred to the FWS request for reinitiation of consultation as being determinative to trigger the required consultation under 402.16(a) because "it is primarily responsible for protecting endangered species and it drafted the regulations at issue here." *Id.* at 1388

As Plaintiff points out, the Defendants ignore *Bennett v. Spear,* 520 U.S. 154, 169 (1997), describing the theoretical advisory function of FWS's BiOp as in reality having a powerful coercive effect on the action agency. While the "'action agency is technically free to disregard the Biological Opinion and proceed with its proposed action . . . it does so at its own peril,' because 'of the virtually determinative effect of [FWS's] biological opinion.'" (Response (Doc. 19) at 11 (quoting *Bennett,* 520 U.S. at 170).

The Plaintiff notes the equally coercive provisions in Section 7, explained in the Consultation Handbook relied on by the Defendants: "'[w]hen consultation needs to be reinitiated but the action agency neither agrees nor responds, [FWS] should send a letter clearly outlining the change of circumstances supporting the need for reinitiation,' and 'present[ing] a clear case for why [FWS has] determined that one or more of the four general conditions for reinitiating consultation have been triggered.'" (Response (Doc. 19) at 11 (quoting "Endangered Species Consultation Handbook, Procedures for Conducting Consultation and Conference Activities Under Section 7 of Endangered Species Act"[2] at 2-11). "If the action agency 'still refuses to consult, the issue should be elevated to . . . [FWS's Regional Office] and may ultimately be referred to . . . the FWS Law Enforcement Division and the Office of the Solicitor.'" *Id.* (citing Consultation Handbook at 2-10 and 2-11). So as noted by the Court in *Bennett* in the context of an FWS BiOp, it is equally true in the context of reinitiating consultation under 402.16(a) that the "action agency is technically free to disregard the [FWS request] and proceed with its proposed action . . . it does so at its own peril," because "of the virtually determinative effect of the [FWS request]." *Supra above.* In short, the regulatory scheme involves procedures for interagency cooperation rather than solely placing the duties of consultation on either the

---

[2] https:www.fws.gov/endangered/esa_library/pdf/esa_Section7_handbook.pdf.

action agency or consulting agency. (Response (Doc. 19) at 10 (citing *Hoopa Valley Tribe,* 230 F. Supp. 3d at 1117 (both have clear obligation to participate in and complete required consultation process).

Defendants argue that, notably, the Ninth Circuit has never addressed whether a consulting agency is a proper party to a failure to reinitiate claim because in *Salmon Spawning & Recovery*, the consulting agency never argued that it was not a proper defendant because it lacked the authority to compel the action agency to reinitiate consultation. Instead, the two agencies jointly argued their defense. (Reply (Doc. 22) at 7.) The Court finds that while the precise argument made by Defendants here may not have previously been presented, this is not a matter of first impression because unlike *Flowers*, which did not even address the regulation at issue in this case, the Ninth Circuit cases relied on by the Plaintiff have answered the precise question which is at the heart of the argument made by the Defendants. In the Ninth Circuit, 50 C.F.R. 402.16 places a coterminous duty on both the acting agency and consulting agency to consult, if any of the enumerated criteria are met.

More notably, the Court finds that Defendants' challenge to the applicability of *Salmon Spawning* calls into question the Defendants' argument that the Court should defer to the agency's assertedly 30-year consistent interpretation that "the regulation 'does not impose an affirmative obligation on the Service to reinitiate consultation if any of the criteria have been met,' but that '[i]t is ultimately the responsibility of the Federal action agency to reinitiate consultation with the relevant Service when warranted." (Reply (Doc. 21) at 8) (citing 84 Fed. Reg. 44,976, 44,980 (August 27, 2019)). The Court compares the arguments in the *Salmon Spawning* genre of cases with the recently adjudicated district court cases, *Pacificans, Wild Fish Conservancy, Hoopa Valley Tribe, Alliance for the Wild Rockies*¸ and *Wildearth Guardians v. USFS,* 2020 WL 2239975 (Idaho May 7, 2020). These recent cases reflect that FWS is making an argument based on a new regulatory-interpretation.

This conclusion is supported by a comparison of the 1986 and 2019 Final Rules. The agency interpretation from 1986 reflects only that "reinitiation of formal consultation is required in certain instances as specified in § 402.16" and in a comment to the proposed rule, the Service [FWS] noted "its lack of authority to require Federal agencies to reinitiate consultation if they choose not to do so. Nevertheless, the Service shall request reinitiation when it believes that any condition described in this section applies." 51 Fed. Reg. 29,926, 19,956 (June 3, 1986). The argument made by Defendants now is based on the Final Rule, Endangered and Threatened Wildlife and Plants: Regulations for Interagency Cooperation, "revisions to the regulations to clarify, interpret, and implement portions of the Act concerning the interagency cooperation procedures," effective September 26, 2019. 84 Fed. Reg. 44,976 (Summary). The regulation remains the same.

The FWS's interpretation of its regulation governing reinitiation of Section 7 consultation is entitled to deference because it represents the agency's official position, after having been published in the Federal Register and subjected to public review and comment, and implicates the agency's substantive expertise and fair and considered judgment. (Motion (Doc. 17 n. 7 (citing *Kisor v. Wilkie*, 139 S. Ct. 240, 2416-17 (2019)). The Plaintiff, however, points out that there is no need for and agencies are not afforded deference "unless the language of the regulation is genuinely ambiguous." *Id.* at 2415. (reinforcing limits inherent to doctrine of deference, *Auer v. Robbins*, 519 U.S. 452 (1997); first, court must find that the regulation is genuinely ambiguous). The lack of any ambiguity in the regulation for over 20 years advises against the need for interpretive deference.

The FWS's new take on the regulation is not persuasive because it flies in the face of the clear language of the regulation as established under the law of this circuit. Plaintiff has properly alleged a legal duty under ESA against FWS for its failure to reinitiate and complete Section 7 consultation. The Administrative Procedures Act (APA) provides a cause of action for enforcing a legal duty, and the FWS has waived its sovereign immunity from suit. *San Carlos Apache Tribe v. United States,* 417 F.3d 1091, 1096 (9th Cir 2005)

*see also* (Motion (Doc. 18) at 16-17 (explaining jurisdictional waiver of sovereign immunity)). The Court finds that the Plaintiff has carried its burden to establish subject matter jurisdiction over the Count I claim against FWS.

**Accordingly,**

**IT IS ORDERED** that the Motion to Dismiss (Doc. 18) is DENIED.

**IT IS FURTHER ORDERED** that the Application for Intervention (Doc. 16) is GRANTED, and the Intervenors shall file their Answer within 7 days of the filing date of this Order.

**IT IS FURTHER ORDERED** that, within 21 days of the filing date of this Order, the Defendants shall file an Answer.

Dated this 13th day of November, 2020.

David C. Bury
United States District Judge